IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00291-PAB-KAS

EMANUEL PITTMAN,

    Plaintiff,

v.

JEFF LONG,
ROLAND JACKSON,
MITCHELL,
WEAVER,
DEAN WILLIAMS,
ORIN,
BARNES,
VASQUEZ,
DORSEY, and
JANE OR JOHN DOE,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendants' **Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)** [#50][1] (the "Motion"). Plaintiff filed a Response [#52] in opposition to the Motion [#50], Defendant filed a Reply [#53], and Plaintiff filed a Surreply [#54].[2] The

---

[1] "[#50]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] Surreplies are not contemplated by the Federal Rules of Civil Procedure or the Local Rules of Practice. However, "[g]enerally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). "Material, for purposes of this framework, includes both new evidence and new legal arguments." *Id.* (internal quotation marks and citation omitted). Although

Motion [#50] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#51]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#50] be **GRANTED**.

## I. Background[3]

Plaintiff is a convicted and sentenced state prisoner, and he proceeds in this matter as a pro se litigant.[4] *Second Am. Compl.* [#19] at 3. He alleges that, since mid-July 2022, Defendants have denied him the purportedly required four hours of social time seven days per week and minimum three hours of outside exercise time, in violation of Administrative Regulation ("AR") 600-09. *Id.* at 7. He claims he received fifty hours of out-of-cell time between July 2022 and May 2023, but he also provides a detailed list of his out-of-cell *exercise* time for that same period, which equates to seventy hours. *See id.* at 8-9, 13. He states that he has been in the close custody Management Control Unit

---

the Court did not previously grant Plaintiff leave to file a Surreply, the Court nevertheless has considered it in its adjudication of the Motion [#50].

[3] To resolve the Motion [#50], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Second Amended Complaint [#19]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, to the extent that Plaintiff provides additional allegations or possible new claims in his briefs, the Court notes that a party may not amend his complaint in motion briefing. *See, e.g.*, *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) (stating that "a party may not amend its complaint by way of arguments in a brief"); *Wilson v. Johnson*, No. 19-cv-2279-CMA-NRN, 2020 WL 5815915, at *5 (D. Colo. Sept. 30, 2020) (stating that it is "well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss").

[4] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

(formerly referred to as Administrative Segregation), where he is confined to his cell for 24 hours a day when not receiving his time out under AR 600-09, that he could not see out his window, that no sunlight came in through the window, that no programs were provided, that the library "might come with 3 books every 2 months or none," that the showers were "hardly ever cleaned," that people were "banging on the walls and doors all night," that the lights were dimmed but never off, and that "staff shine [a] flashlight in [his] face." *Id.* at 7. As a result of these general conditions, Plaintiff states that he is enduring "emotional imbalances w[h]ere [he] argue[s] with [him]self & staff," his hallucinations have gotten worse, and he has high blood pressure, frequent headaches and dizzy spells. *Id.* at 7-8. He identifies his pre-existing mental health disorders as post-traumatic stress disorder, traumatic brain injury, and intermittent explosive disorder. *Id.* at 6, 8.

Plaintiff seeks "$1,000,000 against each defendant jointly and severally," as well as "nominal damages and punitive damages in the amount of $1,000,000 against each defendant."[5] *Id.* at 31. In the present Motion [#50], Defendants seek dismissal of all claims asserted by Plaintiff.

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"

---

[5] All official capacity claims and Plaintiff's requests for injunctive and declaratory relief were previously dismissed. *See Order* [#26].

*Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

**A.     Eighth Amendment**

Plaintiff asserts violations of his civil rights by each Defendant based on conditions of his confinement. *Second Am. Compl.* [#19] at 7-10. Defendants, against whom only individual capacity claims remain, *see Order* [#26], argue that they are entitled to qualified immunity. *See Motion* [#50] at 12-13.

A qualified immunity defense "protects government officials from civil liability so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Arnold v. City of Olathe*, 35 F.4th 778,

788 (10th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). To determine whether qualified immunity applies, the Court considers (1) whether "the officers' alleged conduct violated a constitutional right," and, if so, (2) whether "it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (citation and internal quotation marks omitted).

"The Eighth Amendment requires jail officials to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measure to guarantee the inmates' safety." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation and internal quotation marks omitted). "To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component." *Id.* First, the deprivation at issue must be sufficiently serious, which is analyzed based on the severity and duration of the deprivation. *Id.* Second, the jail official must have a "sufficiently culpable state of mind," which is analyzed under a standard of "deliberate indifference to inmate health and safety." *Id.* "Deliberate indifference" occurs where the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks and citation omitted).

5

Prison "conditions may be restrictive and even harsh without violating constitutional rights." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (internal quotation marks omitted). For example, in *Sperry v. Wildermuth*, No. 16-3222-SAC, 2020 WL 7770932, at *1, *4 (D. Kan. Dec. 30, 2020), *rev'd on other grounds by Sperry v. Wildermuth*, No. 21-3009, 2022 WL 946936 (10th Cir. Mar. 30, 2022), the incarcerated plaintiff asserted that he had been placed in administrative segregation for seventeen months (about six months longer than the period at issue here for Plaintiff), where he was kept in 24-hour lockdown with no human interaction, among other restrictions. "Starting from the position that 'restrictive and even harsh' conditions are not unconstitutional," the court held that the plaintiff had failed to meet his "burden of alleging conditions sufficiently serious so as to deprive him of the minimal civilized measure of life's necessities or subject him to a substantial risk of serious harm." *Sperry*, 2020 WL 7770932, at *4 (citing *Ajaj v. United States*, 293 F. App'x 575, 582-84 (10th Cir. 2008)) (holding that conditions of confinement which included "lockdown 23 hours per day in extreme isolation," "indefinite confinement," and "limited ability to exercise outdoors" were not constitutionally infirm). In other words, the plaintiff had "failed to allege that he has been deprived of life's basic necessities or that he has been subjected to a substantial risk of serious harm." *Sperry*, 2020 WL 7770932, at *4.

Here, Plaintiff states that, since mid-July 2022, Defendants have denied him the purportedly required four hours of social time per day and minimum three hours of outside exercise time. *Second Am. Compl.* [#19] at 7. Plaintiff alleges that he has received fifty hours of out-of-cell time between July 2022 and May 2023; however, he also provides a detailed list of his out-of-cell exercise time for the same period, which equates to seventy

6

hours. *See id.* at 8-9, 13. Plaintiff further states that he has been in the close custody Management Control Unit, where he is confined to his cell for 24 hours a day, he cannot see out the window, no sunlight comes through the window, no programs are provided, the library "might come with 3 books every 2 months or none," the showers are rarely cleaned, people are "banging on the walls and doors all night," the lights are dimmed but never turned off, and staff shine a flashlight in his face. *Id.* at 7. However, Plaintiff has not alleged that he was deprived of basic necessities such as food, clothing, shelter, medical care, or reasonable safety measures. *See Craig*, 164 F.3d at 495. In short, based on the information alleged, the Court finds that Plaintiff has not adequately stated a conditions-of-confinement claim.

However, even assuming that Plaintiff has stated a claim, Defendants would be entitled to qualified immunity on the second prong of the analysis, i.e., regarding whether there was clearly established law on or before May 2023 that the conditions Plaintiff endured were constitutionally infirm. "The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). For qualified immunity, the right must be "clearly established at the time of [the] defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quotations omitted). "District court cases lack the precedential weight necessary to clearly establish the law for qualified immunity purposes." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1306 (10th Cir. 2021). Rather, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012). "An unpublished opinion . . . provides little support for the

7

notion that the law is clearly established on [a] point." *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007). However, "an unpublished opinion can be quite relevant in showing that the law was not clearly established." *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) ("If we make the collegial, and quite legitimate, assumption that panels of this court render reasonable decisions, we would be hard pressed to say that a proposition of law was clearly established at a time when an unpublished opinion by a panel of this court said the opposite").

The Court has found no Tenth Circuit published case, including those cited by Plaintiff, to show that "the violative nature of [the] *particular* conduct [had been] clearly established" by May 2023, the end of the Complaint's operative timeframe. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original). In the 2018 decision, *Grissom v. Roberts*, 902 F.3d at 1174, the Tenth Circuit held that it was not clearly established law that an inmate's 20-year placement in solitary confinement—where he regularly communicated with others and had regular access to indoor and outdoor exercise, reading materials, and health care—amounted to cruel and unusual punishment. In *Apodaca v. Raemisch*, 864 F.3d 1071, 1074 (10th Cir. 2017), the Tenth Circuit held that it was not clearly established that an eleven-month ban on outdoor exercise by inmates in administrative segregation was cruel and unusual punishment. In *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 808-809 (10th Cir. 1999), the Tenth Circuit held that the "district court erred in sua sponte dismissing [the] plaintiff's Eighth Amendment claim for deprivation of outdoor exercise" when plaintiff was not permitted to exercise outside of his cell for over a year. Lastly, in *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987), the Tenth Circuit noted that no court had ruled that a denial of fresh air and

exercise "is per se an Eighth Amendment violation" and held that the plaintiff's Eighth Amendment rights were not violated when he was allowed to use the outdoor exercise facility for one hour a week.

Further, the Supreme Court cases cited by Plaintiff do not demonstrate a violation of clearly established law under the circumstances of Plaintiff's present lawsuit. In *Estelle v. Gamble*, 429 U.S. 97, 102, 107 (1976) (internal citations omitted), the Supreme Court expressed that "the [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" but ultimately determined that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Farmer v. Brennan*, 511 U.S. 825, 829, 837 (1994), a case involving a transgender inmate who alleged deliberate indifference towards their safety after they were beaten and raped by another inmate, clarified the standard for deliberate indifference: "[an] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Wilson v. Seiter*, 501 U.S. 294, 304, 305 (1991) held that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise"; however, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment[.]"

Finally, the Court finds that the weight of authority from other circuit courts, including the cases cited by Plaintiff, does not demonstrate relevant clearly established law between July 2022 and May 2023. By way of example only, in *Norbert v. City and*

*County of San Francisco*, 10 F.4th 918, 931-33 (9th Cir. 2021) (quoting *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018)), the Ninth Circuit found that "the Constitution requires jail officials to provide outdoor recreation opportunities, or otherwise meaningful recreation, to prison inmates," and that prior cases did not suggest a categorical requirement that "exercise . . . take place outdoors regardless of any indoor recreation options." In *Hamner v. Burls*, 937 F.3d 1171, 1178-79 (8th Cir. 2019), the Eighth Circuit found that it was not clearly established that an Eighth Amendment violation would arise from a mentally ill inmate's placement in administrative segregation without access to television or regular reading material for almost seven months. In *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994), the Ninth Circuit held that, "[b]efore the period in question, several circuits . . . have held that deprivation of outdoor exercise *could* constitute cruel and unusual punishment." The Tenth Circuit was not among the circuits mentioned. *See Allen*, 48 F.3d at 1087. Finally, in *Delaney v. DeTella*, 256 F.3d 679, 684, 686 (7th Cir. 2001), a case where the plaintiff "remained in a cell the size of a phone booth without any meaningful chance to exercise[,]" the Seventh Circuit held that "case law clearly established that extended denials of exercise privileges raised constitutional concerns."

      The Court therefore finds that Plaintiff has failed to allege the violation of a clearly established right and, thus, that Defendants are entitled to qualified immunity. Accordingly, the Court **recommends** that Plaintiff's Eighth Amendment claim be **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (holding that district court erred in dismissing pro se prisoner's complaint with prejudice because dismissal with leave to amend is appropriate where the pleading defects can be corrected).

10

**B.     ADA**

Plaintiff titles his claim as "Eighth Amendment cruel & unusual, deliberate indifference, ADA." *Second Am. Compl.* [#19] at 7. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "State prisons fall squarely within [Title II's] statutory definition of 'public entity.'" *Crane*, 15 F.4th at 1312 (quoting *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). There are three elements that a plaintiff must allege in order to state a claim under Title II of the ADA: "(1) he is 'a qualified individual with a disability'; (2) he 'was either excluded form participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity'; and (3) 'such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" *Id.* (citing *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016)).

Plaintiff alleges that he suffers from a "[t]raumatic Brain Injury to the frontal lobe [and] left temporal lobe[,]" post-traumatic stress disorder, and intermittent explosive disorder, which result in "emotional imbalances were [*sic*] [he] argues with [himself and] staff." *Second Am. Compl.* [#19] at 6, 7. Plaintiff further alleges that "[t]here is no comprehensive mental health treatment for people with Traumatic Brain Injur[ies] nor are there any programs available to people in solitary confinement like people in general population have educational, thinking for a change etc." *Id.* at 11. The Court construes Plaintiff as also asserting that the conditions he is subject to have a worse effect on him because of his mental health issues. *See id.* at 8. However, even assuming, without

11

deciding, that Plaintiff's infirmaries qualify as a disability under the ADA, and that Defendant discriminated against him, Plaintiff's ADA claim still fails on the third prong because Plaintiff does not allege that his purported exclusion from these programs "was by reason of" his disability. Instead, Plaintiff alleges that, because he is in "solitary confinement," he is not provided with the same programs as the inmates in general population and that the conditions he is subject to are those of the close custody MCC. *Id.* at 7, 11.

Accordingly, the Court finds that Plaintiff has failed to plausibly allege an ADA claim and therefore **recommends** that Plaintiff's ADA claim be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#50] be **GRANTED** and that Plaintiff's Second Amended Complaint [#19] be **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the

district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 23, 2024                    BY THE COURT:

                                          Kathryn A. Starnella
                                          United States Magistrate Judge